UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            CASE NO. 1:16-CV-215

v.                                       HON. ROBERT J. JONKER

PERIS DWIGHT SMITH,

        Defendant.

_____/

### ORDER

This matter is before the Court on the government's Notice of Potential Conflict of Interest (ECF No. 63), and Defendant's request for substitution of counsel. In particular, Defendant asks to substitute his brother, Demetrius Smith, as his counsel in the case. Demetrius would replace Defendant's current appointed counsel and would not receive public funds. Nor is it clear whether Demetrius would be paid by other sources either, or would handle the representation primarily as a personal favor for his brother (ECF No. 71, PageID.346-347).

On March 22, 2017, this Court held a hearing concerning these matters. A portion of that hearing was held outside the presence of the government. The Court provided the parties until April 21, 2017, to further address in writing the various matters brought up at the hearing. Based on the Court's review of the record, and for the reasons set forth below, the Court finds that Mr. Demetrius Smith ("Demetrius") faces, or is likely to face, significant conflicts of interest. The Court further finds that these conflicts cannot be waived or cured by remedial measures. Accordingly, the Court will not permit Demetrius to substitute in as counsel for his brother, and will

disqualify Demetrius from further representation of Defendant Peris Dwight Smith in this matter. Because the relationship between Defendant and his present appointed counsel is no longer functioning, however, the Court will relieve appointed counsel, and will substitute newly appointed counsel in her place.

## BACKGROUND

Defendant Peris Smith has been charged with making false claims and conversion of government funds as part of a false tax refund "stolen identity refund fraud" (SIRF) scheme. Specifically, the government alleges that Defendant filed approximately one hundred IRS Forms 1040 and 1040A in the names of various persons with low to no income. On these forms, Defendant allegedly provided false information to the Internal Revenue Service and the U.S. Treasury, such as false reporting of dependents, wages, tax credits, and listings of return addresses. Through these filings, Defendant allegedly fraudulently obtained refund debit cards to make purchases and withdraw cash. The losses to the United States Treasury as a result of this alleged scheme totaled approximately $600,000.

At his first appearance, Defendant requested court-appointed counsel. On January 4, 2017, the Court appointed an experienced criminal defense attorney, Ms. Jolene Weiner-Vatter, to serve as defense counsel for Defendant. Subsequently, and for several different reasons, the relationship between defense counsel and Defendant deteriorated rapidly. In particular, Defendant and Ms. Weiner-Vatter engaged in several very heated discussions–both in person and over the phone–regarding how to proceed with the case. Both Defendant and Ms. Weiner-Vatter agree that the attorney-client relationship has now deteriorated to the point that it is beyond repair. In the

Court's view, this is through no fault of appointed counsel, but the breakdown nonetheless remains real.

On March 13, 2017, Attorney Demetrius Smith filed an appearance in this matter, intending to represent Defendant as counsel of record. Demetrius Smith is the brother of Defendant Peris Smith. According to the government, Demetrius is at least a potential witness in this case and may even be a subject of the investigation himself. The government alleges that Demetrius accompanied Defendant on an airline trip to Texas in May 2012. There, Defendant allegedly used illegally obtained refund debit cards to make $2,400 in cash withdrawals (ECF No. 68, PageID.290). The government is not presently alleging that Demetrius participated in the illegal conduct at issue, but the government believes his presence on the trip may at a minimum make him a fact witness. *Id.* The government's counsel also characterized Demetrius as a subject of investigation.

Additionally, the government claims that Demetrius's representation of Defendant in this matter will lead to conflicts of interest based not only on his own precarious position, but also on multiple family members' involvement. Defendant's wife, who worked at a medical practice and is a co-defendant in this case, allegedly provided Defendant with some of the victims' personal identifying information. *Id.* at PageID.289. Defendant's first cousin, Taneshea Smith, who worked at a debt collection agency, allegedly did the same and also allegedly rented the storage unit in which many of the tax returns and related documents were found. *Id.* Additionally, some of the tax return filings at issue were addressed to Defendant's family members–including his mother, siblings, cousins, and a former sister-in-law. In fact, the government represents that it has issued trial subpoenas for testimony to four of Defendant's family members, including his mother, a sister, and two of his cousins. *Id.* The government claims that, as a result, Demetrius's representation of

3

Defendant in this matter will inevitably lead to the risk of hostile cross-examination of his own sister-in-law (or former sister-in-law), and other family and relatives. The government filed a notice to this effect on March 13, 2017.

This Court held a hearing concerning these matters on March 22, 2017, and issued an Order providing the Defendant and government until April 21, 2017, to further address in writing the matters brought up at the hearing (ECF No. 66). On April 21, 2017, the government filed its brief (ECF No. 68). That same day, Defendant's response in opposition to disqualification was filed (ECF No. 71).

## DISCUSSION

The Sixth Amendment to the United States Constitution provides, in relevant part, that: "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. CONST. ART. VI. "One element of this [constitutional] guarantee is the right to counsel of choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). The right to counsel of choice, however, is not without limitation. *See United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996). This is especially the case for defendants who require the appointment of counsel. *See Wheat v. United States*, 486 U.S. 153, 159 (1988).[1] Instead, "[t]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (internal citations omitted). Accordingly, where "considerations of judicial administration supervene" or an attorney has a serious potential conflict of interest, the presumption in favor of counsel of choice is rebutted

---

[1] Redacted (footnote refers to ex parte hearing before the Court on 4/21/2017). A version of this Order, including footnote 1, will be provided under Restricted Access to the Defendant.

and the right must give way. *See Voigt*, 89 F.3d at 1074 (citing *Fuller v. Diesslin*, 868 F.2d 604, 607 n.3 (3d Cir. 1989)).

"The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *See Wheat*, 486 U.S. at 164. In making this determination, the district court must balance the defendant's right to counsel of choice against "the proper and fair administration of justice." *Voigt*, 89 F.3d at 1074. Additionally, the Court is guided by the Code of Professional Responsibility that regulates attorneys' conduct. *See United States v. Kolodesh*, No. 11-464, 2012 WL 1156334, at *4 (E.D. Pa. April 5, 2012) (quoting *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991)).

"Determining whether such a potential [conflict of interest] exists is no simple task [as] the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Id.* at 1076 (citing *Wheat*, 486 U.S. at 162-63 (internal quotation marks omitted). A court, however, "should not be required to tolerate" conflicts of interest because this "not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court," but also undermines "the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver." *Wheat*, 486 U.S. at 162 (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978)).

It is "often impermissible for an attorney to be both an advocate and a witness," because this is one of the situations where a conflict of interest will likely arise. *United States v. Merlino*, 349 F.3d 144, 151 (3d Cir. 2003); *see also United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008). In fact, "disqualification . . . may be appropriate where it is based solely on a lawyer's personal

knowledge of events likely to be presented at trial, even if the lawyer is unlikely to be called as a witness." *See Merlino*, 349 F.3d at 151 (citing *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993)). This is because an "attorney's role as a potential witness [is] inherently inconsistent with his role as an advocate because he would be tempted to focus on his own personal interest rather than serving his client." *Kolodesh*, No. 11-464, 2012 WL 1156334, at *6-*8.

A conflict of interest also arises in situations where attorneys have divided loyalties to their client and third parties, including natural family members. *See United States v. Pizzonia*, 415 F. Supp. 2d 168, 184 (E.D.N.Y. 2006). This situation commonly arises where a "lawyer's former client will testify against his current client as a witness for the Government," *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996), but also in cases where an attorney is called upon to cross-examine natural family members with interests adverse to those of his client. *See Pizzonia*, 415 F. Supp. 2d at 184. In such cases, representation is presumptively suspect. *See Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987) ("An attorney who cross-examines a former client inherently encounters divided loyalties."); *United States v. Yannotti*, 358 F. Supp. 2d 289, 292 (S.D.N.Y. 2004) (disqualifying defense attorney despite defendant's waiver where attorney's father was officer in organized crime family to which defendant belonged and attorney's uncle was longtime officer in same family).

A conflict of interest also occurs where "defense counsel has independent personal information regarding the facts underlying his client's charges, and faces potential liability for those charges." *Id.* at 136 (citing *United States v. Crockett*, 506 F.2d 759 (5th Cir. 1975)). This is because "[a]n attorney who faces criminal or disciplinary charges for his or her actions in a case will not be able to pursue the client's interests free from concern for his or her own." *Merlino*, 349 F.3d at 151

(citing *United States v. Greig*, 967 F.2d 1018, 1022-23 (5th Cir. 1992)). In fact, there need not even be direct evidence tying the attorney to the alleged criminal conduct, so long as there is a "mere possibility that [the attorney] may face criminal or professional misconduct charges." *United States v. Lacerda*, 929 F. Supp. 2d 349, 358 (D.N.J. 2013). It is sufficient that there is "evidence from which a fact finder could reasonably infer that [counsel] was involved in or had intimate knowledge of" the defendant's criminal conduct. *Kolodesh*, 2012 WL 1156334, at *6 (citing *Virgin Islands v. Zepp*, 748 F.2d 125, 136 (3d Cir. 1984)).

      The Court holds that Demetrius is disqualified from representing the Defendant. First, there is a reasonable likelihood that Demetrius will have to be called by defense or even the government as a fact witness at trial in this case. The government has provided evidence that Demetrius was present at the time Defendant received some of the debit cards at issue; that Demetrius flew down to Texas with Defendant, where cash withdrawals from the debit cards took place; and that Demetrius held large amounts of the refund cash for Defendant. Based on these allegations, it is more than possible that the government or Defendant himself may call Demetrius to testify about his knowledge of and connection to the alleged SIRF scheme. Should Demetrius take the stand, his testimony would have the potential to directly inculpate Defendant, and thereby seriously undermine the effectiveness of his assistance to Defendant. *See Swafford*, 512 F.3d at 839-40 (upholding disqualification of counsel where "the government might offer evidence leading the defendant to testify, which, in turn, might implicate the counsel's conflict of interest.").

      But even if Demetrius is not called to testify at trial, his first-hand knowledge of his brother's alleged criminal activities and his duty or loyalty to his family members and relatives–one of whom is a codefendant and others who will likely be called as witnesses by the government–presents a

presumptive conflict of interest. *See Pizzonia*, 415 F. Supp. 2d at 184. As noted above, Demetrius's former sister-in-law and first cousin allegedly provided Defendant with some of the victims' personal identifying information. Additionally, some of the tax return filings at issue were addressed to Defendant's family members–including his mother, siblings, cousins, and a former wife. Based on the trial subpoenas for testimony issued by the government to four of Defendant's family members–including his mother, a sister, and two of his cousins–Demetrius's representation of Defendant in this matter would inevitably lead to the risk of hostile cross-examination of his own former sister-in-law, and other family and relatives and presents a presumptive conflict of interest. *See Yannotti*, 358 F. Supp. 2d at 292 (disqualifying defense attorney despite defendant's waiver where attorney's father was officer in organized crime family to which defendant belonged and attorney's uncle was longtime officer in same family); *Culp*, 934 F. Supp. at 398 (holding counsel disqualified from representation where his cross-examination of a former client in the trial of his current client would result in "divided loyalties.").

These same facts form the basis from which this Court could reasonably infer that Demetrius was involved in or had intimate knowledge of Defendant's alleged criminal activities. At the very least, there is a possibility that Demetrius may face criminal or professional misconduct investigation or charges regarding the same activities that form the basis for Defendant's charges. In fact, it is the government's position that Demetrius is currently a subject in the investigation related to Defendant's alleged criminal activities (ECF No. 69, PageID.306). Accordingly, it is certainly plausible that any representation by Demetrius would be guided first and foremost by his own self-

preservation rather than his client's interest in loyal and unbiased representation.[2] *See Merlino*, 349 F.3d at 151; *Kolodesh*, 2012 WL 1156334, at \*6.

These conflicts have the potential to substantially harm the interests of the government and the Court itself if Demetrius were to represent Defendant.[3] Demetrius may have become privy to certain facts relevant to Defendant's culpability–or lack thereof–to the government's charges, thereby affording him an unfair advantage at trial. This raises the specter of Demetrius being able to provide Defendant's version of the facts with first-hand knowledge but without being subject to cross-examination. Such a de-leveling of the playing field, however, is precisely what the federal system seeks to avoid. *See United States v. Cronic*, 466 U.S. 648, 655 (1984). The possibility that Demetrius may gain an unfair advantage over the government due to his first-hand knowledge further counsels against his representation of Defendant. Additionally, this Court has "an independent interest in ensuring [that] criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988). District courts also have a "legitimate wish . . . [to have] their judgments remain intact on appeal." *Voigt*, 89 F.3d at 1078. By disregarding potential conflicts of interest at this time, the Court

---

[2] The Court stresses that it is not implying that Demetrius would commit any unethical act if, in fact, he did represent Defendant. Nor does the Court imply that Demetrius engaged in any illegal behavior tied to this case. The Court merely finds that Demetrius's connection–during the relevant time frame–to issues at the heart of the indictment gives rise to an unavoidable potential for conflict of interest.

[3] The Court recognizes that in some cases "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *Wheat*, 486 U.S. at 163. This is not such a case. At the hearing, Demetrius stated that he became a member of the Michigan bar in 2012 and the Federal bar in 2016. He currently maintains a solo practice focused mainly on discovery and document review-related work. Although he has done some criminal defense work, he has never tried a case in federal court, or in any court, for that matter.

9

would open itself up to possible collateral attack and appeal later on. Accordingly, it is within this Court's best interest to prevent this possibility before it manifests itself.

Defendant's willingness to waive any conflict of interest and even the right to cross-examine his family members at trial does not render Demetrius's representation feasible. District courts have "substantial latitude in refusing waivers of conflicts of interest." *Voigt*, 89 F.3d at 1077 (internal citation omitted). Here, the Court finds that Defendant's proposed waiver does not alleviate the potential for serious conflicts of interest. Defendant's proposed waiver does not prevent Demetrius from being called to take the stand and testify to Defendant's detriment. Nor does such a waiver address the unfair advantage gained by Defendant from having counsel with first-hand knowledge of facts critical to proving the charges. Most importantly, however, Defendant's waiver of the right to cross-examine his immediate family members heightens the possibility that he may reconsider and recant his decision later. Accordingly, the effectiveness of a waiver under these circumstances is highly questionable. For these reasons, the Court finds Defendant is unable to waive the potential conflicts at issue here.

The Court certainly sympathizes with Defendant's desire to have his brother–who Defendant unquestionably holds in high regard–as his counsel in a case of tremendous import for Defendant's future, no matter the outcome. Additionally, the Court agrees with Defendant and his current defense counsel that their relationship has deteriorated to the point where it is beyond repair. But this Court finds that Demetrius's conflicts are too serious for him to assume the role of counsel for Defendant; so serious, in fact, that they outweigh any potential hardship that would be imposed on Defendant by forgoing that representation. The Court is confident that Ms. Weiner-Vatter can be substituted

by an equally competent and informed counsel appointed by this Court to represent Defendant going forward.

## CONCLUSION

Accordingly, the Court finds that, in order to ensure the integrity of the trial and guarantee an effective advocate for Defendant, the Court must disqualify Demetrius from participation as counsel for his brother in this case.

**ACCORDINGLY**, **IT IS ORDERED** that Defendant's request for substitution of counsel (ECF No. 64) is **DENIED** to the extent that Defendant seeks to retain Demetrius Smith as counsel, but **GRANTED** to the extent the Court will substitute counsel of record, Ms. Jolene Weiner-Vatter, with another panel attorney to be appointed by this Court.

**IT IS SO ORDERED.**

Dated:      April 27, 2017              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE